# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LESLIE MOORE** ) | |
|     *Plaintiff* ) | |
| vs. ) | Case No. 2:22-cv-2291 |
| ) | |
| **ANTHOLOGY, INC.** ) | **JURY TRIAL DEMANDED** |
| Serve Registered Agent: ) | |
|     Corporate Creations Network, Inc. ) | |
|     4601 E. Douglas Avenue, #700 ) | |
|     Wichita, KS 67218 ) | |
|     *Defendant* ) | |

## COMPLAINT

COMES NOW Plaintiff Leslie Moore to allege the following Complaint against Anthology, Inc. ("Defendant").

## NATURE OF THE CLAIMS

1. This a discrimination and retaliation case brought under the Civil Rights Act, 42 U.S.C. § 1981, and Title VII, 42 U.S.C. § 2000e, *et seq.,* arising from Plaintiff's employment with Defendant.

2. Plaintiff seeks a jury trial, reasonable compensatory and punitive damages, costs, reasonable attorneys' fees, interest, and any other relief the Courts finds fair.

## SUBJECT MATTER JURISDICTION

3. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this case because it is a civil action arising under the law of the United States, *to wit*: 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, *et seq.*

## VENUE

4. Pursuant to 28 U.S.C. § 1391(b), Venue is proper in this District because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District.

1

## THE PARTIES

5. **PLAINTIFF** is a Hispanic female citizen of the U.S.A. domiciled in Kansas who identifies as Hispanic, Latina, or brown.

6. From April 9, 2020, to August 17, 2021, Plaintiff was employed by Defendant at its Olathe senior living facility in Johnson County, Kansas.

7. As defined by 42 U.S.C. § 2000e(a), Plaintiff is a "person" because she is an individual.

8. As defined by 42 U.S.C. § 2000e(f), Plaintiff was an "employee" throughout her employment with Defendant because she was an individual employed by an employer.

9. **DEFENDANT** is a corporation organized under Florida law.

10. Defendant operates approximately 37 senior living facilities across the United States.

11. Defendant employs over 500 people.

12. As defined by 42 U.S.C. § 2000e(a), Defendant is a "person" because it is a corporation.

13. As defined by 42 U.S.C. § 2000e(b), Defendant is an "employer" because it is a "person" engaged in an industry affecting commerce having fifteen or more employees for each working day in each of twenty or more weeks in the current or preceding calendar year.

14. Defendant is an entity that acts through its agents and employees. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which it knowingly ratifies, injuries incurred by its agents' performance of non-delegable duties, and acts its agents take by virtue of their position with Defendant.

## ADMINISTRATIVE PROCEEDINGS

15. On October 20, 2021, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) alleging Defendant unlawfully discriminated against her based on her race and color and retaliated against her for opposing discrimination. The EEOC assigned Plaintiff's charge of discrimination the number 562-2022-00179. The charge is attached hereto as **EXHIBIT A** and is incorporated by reference.

16. Defendant received notice of charge no. 562-2022-00179 from the EEOC.

17. Defendant responded to charge no. 562-2022-00179 by submitting a position statement and documents with the EEOC and asking that the EEOC issue a "no cause" finding.

18. On April 29, 2022, the EEOC issued Plaintiff the Notice of the Right to Sue regarding charge no. 562-2022-00179 and authorized her to bring this action within 90 days (or by July 28, 2022). A copy of that Notice of the Right to Sue is attached hereto and **EXHIBIT B** and is incorporated by reference.

19. Ninety days from April 29, 2022, is Thursday, July 28, 2022.

20. Because this action was filed before July 28, 2022, and within 90 days of the EEOC's issuance of the Notice of the Right to Sue, it has been timely filed.

## FACTS

21. On or about April 9, 2020, Plaintiff was hired and began her employment with Defendant.

22. Defendant agreed to pay Plaintiff wages in exchange for Plaintiff's agreement to provide services, and Defendant issued Plaintiff policies setting forth the duties and obligations she owed Defendant and that Defendant owed her.

23. Plaintiff worked in Defendant's Memory Care Unit at its Olathe, Kansas facility.

3

24. Throughout Plaintiff's employment in 2020, access to the Memory Care Unit was restricted to outside visitors, staff, and management due to the COVID-19 pandemic.

25. Throughout much of 2020, Plaintiff had little contact with her direct supervisor, staff outside the Memory Unit, or Defendant's management team.

26. In late 2020, Defendant evaluated Plaintiff's overall work performance as consistently meeting Defendant's expectations and requirements.

27. In January 2021, restrictions to the Memory Care Unit were lessened, and Plaintiff began having more contact with Defendant's management team.

28. In January 2021, Defendant's management began criticizing Plaintiff for not wearing a company shirt at work.

29. Plaintiff did not witness or hear about her white coworkers being reprimanded for not wearing a company shirt at work.

30. Plaintiff witnessed her white coworkers working while not wearing a company shirt.

31. In January 2021, Plaintiff was standing next to a white, female employee who was working without a company shirt on when Defendant's management reprimanded Plaintiff for not wearing a company shirt but did not reprimand the white, female employee standing next to her.

32. In January 2021, a white, female coworker who witnessed Plaintiff being selectively reprimanded by Defendant's management for not wearing a company shirt told Plaintiff this was happening to her "because Terri is a racist…"

33. Two white, female coworkers who routinely did not wear a company shirt while working told Plaintiff that they had never been instructed or even asked to do so.

34. A white, female coworker named Audrey, made derogatory comments about "blacks" in Plaintiff's presence and did not wear a company shirt while working.

35. In January 2021, Plaintiff made a complaint with Defendant's management about its discriminatory application of a uniform policy and about being subjected to "racist comments" about "blacks" by her white coworker.

36. Based on Plaintiff's knowledge, Defendant took no action in response to Plaintiff's January 2021 discrimination complaint.

37. In the spring of 2021, Plaintiff's white coworker, Audrey, continued to make negative or derogatory comments about "blacks" while working without wearing a company shirt.

38. On May 5, 2021, Plaintiff's white coworker, Audrey, told Plaintiff that she is "a word that rhymes with DIGGER."

39. Plaintiff informed Defendant's management that she believed her white coworker, Audrey, was calling her the "n" word.

40. Defendant's management responded to Plaintiff's by saying that she and Audrey were both good employees, the company did not know what was going on between the two of them, but "whatever it is needs to be squashed now."

41. Based on Plaintiff's knowledge, Defendant did not respond to Plaintiff's complaint against Audrey by issuing any written discipline, written corrective action, suspending Audrey, or providing Audrey any training or retraining concerning discrimination in the workplace.

42. Defendant's management yelled at Plaintiff for assisting in the training of a new, African American employee after instructed Plaintiff to do so.

43. On about June 29, 2021, Defendant's management approved Plaintiff for time off to a see a doctor the next day and then reprimanded her for taking the day off.

44. Defendant's management reprimanded Plaintiff for providing a doctor's note indicating she needed to be excused from work from June 30, 2021, to July 5, 2021.

45. In mid-July 2021, Plaintiff informed Defendant that she had been exposed to COVID-19, had symptoms, and that she thought she should not be in contact with the Anthology residents or staff.

46. Although Plaintiff informed Defendant that she had been exposed to COVID-19, had symptoms, and felt she should avoid contact with others, Defendant instructed her to work with its residents and staff until she provided a positive test result and criticized Plaintiff for her reluctance to come to work.

47. Based on Plaintiff's experience with Defendant, it did not make white employees or those who had not made discrimination complaints work with Anthology residents after having a COVID exposure and symptoms.

48. Based on Plaintiff's employment and experience with Defendant, Defendant's management in 2021 engaged in a pattern of discrimination against brown or black employees and engaged in a pattern of retaliation against those who registered discrimination complaints.

49. In or about July and August 2021, a black/African American coworker registered a complaint with Defendant about its management creating a racially hostile work environment against black and brown employees, was then accused of misconduct, sent home or suspended, disciplined, and forced to transfer to a new location.

50. In about August 2021, a coworker told Plaintiff that Defendant's management talked about scrutinizing Plaintiff and creating negative documentation on her.

51. By August 17, 2021, Defendant had intentionally rendered Plaintiff's work environment so intolerable that no reasonable person in her position would have continued working.

52. On August 17, 2021, Plaintiff resigned and again shared her experience that Defendant treated "certain" people very unfairly.

53. Plaintiff's employment with Defendant was terminated on August 17, 2021.

## COUNT I
## DISCRIMINATION
## 42 U.S.C. § 1981

54. By reference, Plaintiff incorporates all other allegations in this *Complaint*.

55. Plaintiff is a member of a protected class because she is Hispanic and identifies as Hispanic, Latina, or brown.

56. During Plaintiff's employment with Defendant, Defendant's agents engaged in a pattern of intentional discrimination against Plaintiff and others based on race/color.

57. Plaintiff's work environment was permeated with discrimination based on race/color which was severe or pervasive enough to alter Plaintiff's working conditions and create an intimidating, hostile, and offensive working environment which would have negatively impacted a reasonable person in Plaintiff's position.

58. Defendant knew or should have known of the racially hostile work environment and discrimination based on race/color but failed to take appropriate remedial action and thereby exacerbated the discrimination.

59. Defendant unequally applied a uniform policy to Plaintiff, gave her unwarranted discipline, criticized her reluctance to work after being exposed to COVID-19, treated her with

hostility, subjected her to on-going harassment, and constructively discharged Plaintiff because of Plaintiff's race or color.

60. Defendant intentionally rendered Plaintiff's working conditions so intolerable that no reasonable person in her position would have continued their employment thereby forcing Plaintiff to quit her job.

61. These acts directly and proximately caused Plaintiff to suffer damages, including economic and emotional damage.

62. Defendant's discrimination against Plaintiff was done with malice or a reckless indifference for Plaintiff's rights. Defendant is liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination in violation of 42 U.S.C. § 1981, and for all available relief including compensatory and punitive damages, equitable relief, costs, reasonable attorneys' and experts' fees, and for such other relief the Court deems just and proper.

## COUNT II
## RETALIATION
## 42 U.S.C. § 1981

63. By reference, Plaintiff incorporates all other allegations in this *Complaint*.

64. Plaintiff made good faith complaints of racial discrimination with Defendant.

65. Plaintiff's complaints of discrimination constitute protected activity under 42 U.S.C § 1981.

66. Defendant issued Plaintiff her unwarranted discipline, treated her with hostility, subjected her to on-going harassment, and instructed Plaintiff to work after being exposed to

COVID-19 and having its symptoms, and constructively discharged Plaintiff because of her protected activity.

67. These acts directly and proximately caused Plaintiff to suffer damages, including economic and emotional damage.

68. Defendant's retaliation against Plaintiff was done with malice or a reckless indifference for Plaintiff's rights. Defendant is liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation in violation of 42 U.S.C. § 1981, and for all available relief including compensatory and punitive damages, equitable relief, costs, reasonable attorneys' and experts' fees, and for such other relief the Court deems just and proper.

### COUNT III
### DISCRIMINATION
### 42 U.S.C. § 2000e

69. By reference, Plaintiff incorporates all other allegations in this *Complaint*.

70. Plaintiff is a member of a protected class because she is Hispanic and identifies as Hispanic, Latina, or brown.

71. During Plaintiff's employment with Defendant, Defendant's agents engaged in a pattern of intentional discrimination against Plaintiff and others based on race/color.

72. Plaintiff's work environment was permeated with discrimination based on race/color so severe or pervasive as to alter Plaintiff's working conditions and create an intimidating, hostile, and offensive working environment which would have negatively affected any reasonable person in Plaintiff's position.

73. Defendant knew or should have known of the racially hostile work environment and discrimination based on race/color but failed to take appropriate remedial action thereby exacerbating the discrimination.

74. Defendant unequally applied a uniform policy to Plaintiff, gave her unwarranted discipline, criticized her reluctance to work after being exposed to COVID-19, treated her with hostility, subjected her to on-going harassment, and forced Plaintiff to quit because of Plaintiff's race/color.

75. Defendant intentionally rendered Plaintiff's working conditions so intolerable that no reasonable person in her position would have continued their employment thereby forcing Plaintiff to quit her job.

76. These acts directly and proximately caused Plaintiff to suffer damages, including economic and emotional damage.

77. Defendant's discrimination against Plaintiff was done with malice or a reckless indifference for Plaintiff's rights. Defendant is liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her *Complaint*, for a finding that she has been subjected to unlawful discrimination in violation of 42 U.S.C. § 2000e, *et seq.*, and for all available relief including compensatory and punitive damages, equitable relief, costs, reasonable attorneys' and experts' fees, and for such other relief the Court deems just and proper.

## COUNT IV
## RETALIATION
## 42 U.S.C. § 2000e-3

78. By reference, Plaintiff incorporates all other allegations in this *Complaint*.

79. Plaintiff made good faith complaints of racial discrimination with Defendant.

80. Plaintiff's complaints of discrimination constitute protected activity under 42 U.S.C § 2000e-3(a).

81. Defendant issued Plaintiff her unwarranted discipline, treated her with hostility, subjected her to on-going harassment, instructed Plaintiff to work after being exposed to COVID-19 and having its symptoms, and constructively discharged Plaintiff because of her protected activity.

82. These acts directly and proximately caused Plaintiff to suffer damages, including economic and emotional damage.

83. Defendant's retaliation against Plaintiff was done with malice or a reckless indifference for Plaintiff's rights. Defendant is liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful retaliation in retaliation of 42 U.S.C. § 2000e-3, and for all available relief including compensatory and punitive damages, equitable relief, costs, reasonable attorneys' and experts' fees, and for such other relief the Court deems just and proper.

### JURY TRIAL DEMAND & DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby demands a jury trial in Kansas City, Kansas for all claims made herein.

**RALSTON KINNEY, LLC**

/s/ *Thomas F. Ralston*
Thomas F. Ralston – D.Kan. #78212
Kenneth D. Kinney – D.Kan. #78544
4717 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Telephone: (816) 298.0086
Facsimile: (816) 298-9455
Email: tom@rklawllc.com
Email: ken@rklawllc.com

**ATTORNEYS FOR PLAINTIFF**